PUBLIC SERVICE RAILWAY COMPANY, PROSECUTOR, v. BOARD OF PUBLIC UTILITY COMMISSIONERS AND JACOB V. MEOLA, DEFENDANTS.

Argued November 2, 1921—Decided March 8, 1922.

1. A jitney, the route of which parallels upon the same street the line of a street railway, is a public utility.
2. Where a person bought, after March 15th, 1921, a jitney (which was a public utility under chapter 149 of laws of 1921), and which was operated on March 15th, 1921, by its prior owner, under a municipal consent obtained prior to that date, and the present owner, after March 15th, 1921, obtained a new municipal consent to the operation of the jitney, such consent is invalid until approved by the board of public utility commissioners after hearing and determination upon competent proof that such privilege is necessary and proper for the public convenience and properly conserves the public interests, as required by section 24 of the Public Utility act (*Pamph. L.* 1911, *p.* 384), and the mere fact that the jitney was in operation by the prior owner on March 15th, 1921, pursuant to a consent granted prior to that date, will not justify the board in approving the new consent.

On *certiorari*, &c.

Before Justices TRENCHARD, BERGEN and MINTURN.

For the prosecutor, *Edmund W. Wakelee* and *Frank Bergen*.

For the defendant Board of Public Utility Commissioners, *L. Edward Herrmann*.

For the defendant Jacob V. Meola, *Richard S. Colfax* and *John H. Reynolds*.

The opinion of the court was delivered by

TRENCHARD, J. On August 26th, 1919, William G. Braem obtained municipal consent to operate an auto bus (commonly called jitney) on what is known as the Riverside route, in the

city of Paterson, pursuant to the "Kates act." Chapter 136 of *Pamph. L.* 1916, *p.* 283. He operated the jitney accordingly until shortly before September 13th, 1921, when he sold the bus to Jacob V. Meola. The latter thereupon obtained a new municipal consent to the operation of the bus, and applied to the board of public utility commissioners for the approval of such consent.

The board after hearing made an order granting such application, and that order is brought up for review by this writ.

The order is challenged upon the ground that the board erroneously granted the application without determining the public necessity for the operation of the bus upon the route in question in the method prescribed by section 24 of the Public Utility act of 1911.

We are of the opinion that the point is well taken, as will appear from an examination of the proceedings and order in question and the statutes involved.

The order is predicated upon a policy announced by the board at the hearing as follows:

"The policy of the board in applications presented to it will be to approve all licenses or permits granted by the municipalities in renewal or substitution of all licenses or permits existing prior to March 15th, unless it can be affirmatively shown that conditions pertinent to the consideration of the necessary factors have so changed as to make either an increase or decrease in the number necessary."

We think that policy as applied in the instant case involves a misconstruction of pertinent statutes and is erroneous.

Section 24 of the Public Utility act (*Pamph. L.* 1911, *p.* 384) provides that *"no privilege* or franchise hereafter *granted to any public utility* as herein defined, by any political subdivision of this state, *shall be valid until approved by said board,* such approval *to be given when after hearing said board determines that such privilege or franchise is necessary and proper for the public convenience and properly conserves the public interests."*

Section 1 of chapter 149 of laws of 1921, page 390 (being

an amendment of the Public Utility act), provides that a *"jitney, the route of which in whole or in part parallels upon the same street the line of any street railway," is a "public utility"* and subject to the jurisdiction, supervision, regulation and control of the board of public utility commissioners. Section 2 of that act reads:

"2. Nothing herein contained shall extend the powers of the board of public utility commissioners to include any supervision and regulation of, or jurisdiction and control over, the operation of any auto bus, commonly called jitney, over its present route, under and in accordance with the consent of the municipal authorities granted therefor prior to March fifteenth, one thousand nine hundred and twenty-one, *by the owner of such consent on said date, or under and in accordance with the renewal of such consent granted to such owner as aforesaid, for further operation by him, upon the expiration of the time limit set forth in such consent."*

The latter section merely denies power to the board to supervise the operation of any jitney over its route under a municipal consent granted prior to March 15th, 1921, *"by the owner of such consent on said date* or under any renewal of such consent *granted to such owner as aforesaid* for further operation *by him* upon the expiration of the time limit set forth in *such consent."*

It is to be noted that the defendant Meola was not the owner of any consent on March 15th, 1921, nor is he the holder of any "renewal of such consent granted to such owner as aforesaid," and this is important. He became the owner of the jitney and received municipal consent after March 15th, 1921.

Now, the board, after deciding that a jitney, the route of which parallels upon the same street the line of a street railway (such as the one in question), was a public utility, and after deciding that the owner's municipal consent was not valid until approved by the board, both of which determinations were correct, then proceeded, erroneously, as we think, to approve the consent without any evidence that the privilege permitted was necessary and proper for the public convenience

97 N. J. L.      Pub. Serv. Ry. Co. v. Public Utility Board.

and properly conserved the public interest, except the fact that the auto bus was in operation by the prior owner on March 15th, 1921, pursuant to a municipal consent granted prior to that date.

The board seems to have substituted what it, mistakenly, as we think, deemed to be the legislative policy for its own judgment, based on evidence as to the public necessity. It assumed, because the legislature did not give the board jurisdiction over the operation of jitneys under municipal consent granted prior to March 15th, 1921, "by the owner of such consent on said date," or under any renewal granted to "such owner," that Meola, the present owner of the bus, which he acquired after March 15th, 1921, and which was operated on that date by the prior owner under a consent granted prior to that date, was entitled to an approval of his new municipal consent granted after March 15th, 1921, regardless of change in ownership, unless it affirmatively appeared to the board that there was no public necessity therefor.

We think that assumption erroneous. Neither Meola nor his bus was excluded from the jurisdiction of the board by the second section of the act of 1921 above recited. As we have pointed out, he was not the *owner* of such consent *on March 15th, 1921,* nor was he the holder of any renewal of *such consent granted to such owner,* and hence was not in the protected class. It was necessary for him to obtain, and he did obtain, after March 15th, 1921, a municipal consent, and that consent was not valid until approved by the board. The exclusion from the jurisdiction and control of the board of such of the jitneys as were in operation prior to March 15th, 1921, applied only to such operation as long as the owner continued in the business. Evidently, it was the intention of the legislature not to disturb those then in business by imposing further conditions unexpected by them, and that is easily understood. If the legislature had desired to exclude from the jurisdiction of the board the *number of buses in operation on March 15th, 1921,* or if, as suggested, the legislature intended that the board should not comply with section 24 of the Public Utility act so long as the *number of buses*

was not increased, it would have been very easy to have said so, and that it did not do. The legislature has chosen to require that a consent such as that in question shall be invalid until approved by the board of public utility commissioners after hearing and finding of public necessity and convenience. Of course, that finding must be the independent judgment of the board based upon competent proof, and cannot depend upon the action of the municipal body granting the previous consent, for public necessity does not follow from that. The fact that some one else had a municipal consent issued prior to March 15th, 1921, to operate this bus, does not relieve the present owner of showing public necessity. As we have pointed out, he could not legally operate his bus until he had obtained municipal consent, and that consent would not be valid until approved by the board, pursuant to the requirements of section 24 of the Public Utility act, and that, we think, has not been done.

The order under review will be set aside, with costs.